UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY LEE BOSHERS,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,
_____/

Case No. 1:16-cv-922

HON. ROBERT J. JONKER

**OPINION**

      This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

**STANDARD OF REVIEW**

      The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was forty-six years of age on the date of the ALJ's decision. (PageID.36, 83, 99.) He has a high school education, and was previously employed as a hand packager, band saw operator, and as an industrial truck driver. (PageID.61, 77.) Plaintiff applied for benefits on September 19, 2013, alleging disability beginning December 21, 2007, due to lupus, depression, chronic migraines, chronic fatigue, insomnia, restless legs, short term memory loss, a deaf right ear,

2

pain in both of his legs, bilateral carpal tunnel syndrome, and a history of polysubstance abuse. (PageID.83, 99, 179–191.) These applications were denied on December 19, 2013, and Plaintiff subsequently requested a hearing before an ALJ. (PageID.118–126, 130.) On January 7, 2015, Plaintiff appeared with his counsel before ALJ James J. Kent for an administrative hearing at which time both Plaintiff and a vocational expert (VE) testified. (PageID.56–81.) On February 12, 2015, the ALJ issued an unfavorable written decision that concluded Plaintiff was not disabled. (PageID.36–55.) On August 10, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.28–34.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

Plaintiff's insured status expired on June 30, 2010. (PageID.83, 99.) To be eligible for DIB under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c) 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.20(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

3

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Kent determined Plaintiff's claim failed at step five. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (PageID.41.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of fibromyalgia, discoid lupus, lumbar spine facet arthropathy, affective disorders, and substance abuse disorders. (PageID.41.) The ALJ further found that Plaintiff's hearing loss and headaches were non-severe impairments. (PageID.42.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.42–43.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can lift no more than 50 pounds occasionally and lift/carry up to 25 pounds frequently. He can occasionally climb

---

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

> ladders/ropes/scaffolds, frequently climb ramps, stairs, and balance, stoop, kneel, crouch, or crawl. He has to avoid even moderate excessive vibration. He is able to perform simple, routine, and repetitive tasks, but he can tolerate few if any changes in the work setting and he cannot perform production rate paced work.

(PageID.43.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.50.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform work in the following representative jobs: material handler (300,000 national positions), equipment cleaner (150,000 national positions), and machine feeder (200,000 national positions). (PageID.77–80.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.51.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from December 21, 2007, the alleged disability onset date, through February 12, 2015, the date of decision. (PageID.51.)

**DISCUSSION**

**1.     The ALJ's RFC Evaluation**

A claimant's RFC represents the "most [a claimant] can still do despite [the claimant's] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also* SSR 96–8P, 1996 WL 374184 at *1 (SSA, July 2, 1996) (stating that a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). Plaintiff first argues that he is entitled to relief on the ground that the ALJ's RFC

5

determination is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ's RFC is deficient because, (1) the ALJ should have found his headaches and migraines were severe impairments, and (2) that the RFC failed to account for the side effects caused by his medication. (PageID.502–505.) A review of the medical evidence reveals that the ALJ's RFC assessment is supported by substantial evidence.

### A. The ALJ's Step 2 Evaluation.

As noted above, the ALJ determined that Plaintiff suffers from multiple severe impairments. Plaintiff argues, however, that he is entitled to relief because the ALJ failed to also find that he suffers from the severe impairment of headaches or migraines. The Court disagrees.

Plaintiff's argument regarding his headaches largely depends on his testimony, which described headaches of debilitating severity and frequency. But the ALJ found these complaints were not entirely credible and Plaintiff does not meaningfully challenge this determination. Other than this testimony, Plaintiff's initial brief references only two records as evidence that he had a severe impairment of headaches or migraines. (PageID.503.) He claims he reported headache symptoms to his treating physician, Dr. Davis, and the doctor opined that Plaintiff was "unable to work in part from the effects of his migraine headaches." (PageID.503.) Contrary to Plaintiff's assertion, neither record mentions Plaintiff's headaches. Dr. Davis' July 18, 2013, treatment note, cited by Plaintiff, mentions only chronic back pain as a complaint. (PageID.313.) And Dr. Davis' June 10, 2014, opinion makes no mention of any impairment, let alone Plaintiff's headaches and migraines. (PageID.361.) In his reply brief, Plaintiff points to a few other records that, at most, indicate Plaintiff complained of headaches. Those records, however, do not demonstrate that Plaintiff ever received any treatment for his headaches. (*See*, e.g., PageID.425-426 (demonstrating

6

that Plaintiff did complain of headaches, but was only treated for lupus, fibromyalgia, and depression)). Thus the ALJ's observation that there were no clinical examinations or imaging results that would account for the level of headaches as described by Plaintiff is well supported.

But even if those records did reflect treatment for headaches or migraines, such would not mandate relief. At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. Where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments . . . does not constitute reversible error").

Here, the ALJ noted his obligation to develop an RFC based on all impairments, including those that were not severe. (PageID.40.) He then proceeded to note that he had developed the RFC after careful consideration of the entire record. (PageID.43.) Thus the record indicates the ALJ satisfied his obligation listed above. The ALJ's failure to classify Plaintiff's headaches as severe was therefore not reversible error.

### B. The ALJ's Evaluation of Plaintiff's Medication Side Effects.

As for Plaintiff's claim that he suffers significant medication side effects, allegations of side effects must be supported by objective medical evidence. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665–66 (6th Cir. 2004) (where claimant testified that she suffered from dizziness

and drowsiness as a result of her medications, the ALJ did not err in finding that she suffered no side effects where her medical records contain no such reported side effects to her physicians); *Farhat v. Sec'y of Health & Human Servs.*, No. 91–1925, 1992 WL 174540 at *3 (6th Cir. July 24, 1992) ("[claimant's] allegations of the medication's side-effects must be supported by objective medical evidence"). Here, Plaintiff asserts that the "testimony and MER is replete with documentation of the side effects from Mr. Boshers's many medications." (PageID.504.) This contention is not supported by the record. Indeed, Plaintiff did not allege any medication side effects in his testimony before the ALJ. (PageID.56–81.) Similarly, on his function report, Plaintiff explicitly stated that he did not have medication side effects. (PageID.233.)

A review of the medical record likewise fails to support Plaintiff's assertion that he suffers from medication side effects. To be sure, there is some scant mention of medication side effects in the record, though none of these records were referenced by Plaintiff. A few treatment records, for example, describe Plaintiff's medical history and note that Cymbalta caused suicidal ideations. (PageID.417.) Other records indicate that Plaintiff was warned of a decrease in appetite, GI upsets, skin pigmentation, and a risk of retinopathy when he took hydroxychloroquine. (PageID.302.) But Plaintiff does not appear to have ever complained of suicidal ideation during the period at issue, and appears to have been taken off Cymbalta completely. (PageID.418–419.) Additionally, Plaintiff later admitted that he never took the hydroxychloroquine, so it is reasonable to conclude he did not experience those side effects. (PageID.423.)

Plaintiff also argues that the ALJ failed to properly consider his fatigue and exhaustion, which he contends are due to side effects from his medication. While the record does show Plaintiff made consistent complaints of fatigue and exhaustion, none of these records state that

8

these symptoms were due to Plaintiff's medications. (PageID.417, 423.) But whether due to side effects or a medically determinable impairment, the ALJ thoroughly evaluated Plaintiff's complaints of fatigue, and found they were not entirely credible and inconsistent with, among other things, an extensive list of daily activities. (PageID.49.) The Court finds this determination to be supported by substantial evidence.

For all the above reasons, this first claim of error is rejected.

**2. The ALJ's Evaluation of the Opinion Evidence.**

Next, Plaintiff contends the ALJ erred in assigning less than controlling weight to the opinion of Dr. Horace Davis, his treating physician, and in giving greater weight to non-examining agency consultants. (PageID.505–507.) The Court disagrees.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating physician if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527)

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported

9

by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers,* 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must provide "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "'are not well-supported by any objective findings' and are 'inconsistent with other credible evidence'" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Gayheart*, 710 F.3d at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinoin with the record as a whole; (5) the specialization of the treating source; and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g.*, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

Dr. Davis' opinion is contained in a "Return to Work Certificate" dated June 10, 2014. (PageID.361.) On the one-page worksheet, the doctor made four checkmarks that would appear to indicate the doctor's opinion that Plaintiff would have unspecified limits and restrictions on daily activity as well as in lifting, standing, and walking. In addition to these rudimentary marks, the doctor concluded that Plaintiff could not return to work. (PageID.361.) The ALJ gave the opinion little weight because:

> Although Dr. Davis has a treating relationship with the claimant, his findings are not consistent with the substantial evidence of record. Further, Dr. Davis failed to provide the objective support, which he relied to make his opinion and the severity of his findings were not supported by his treatment records (i.e., exhibit 4F) or the medical evidence of record.

(PageID.49.) In this, the ALJ provided a more than adequate accounting of his reasons for assigning the opinion less than controlling weight. Indeed, the doctor's statement that Plaintiff cannot work pertains to whether Plaintiff is disabled and is an issue exclusively reserved for the ALJ. As such, it was not entitled to any special significance. 20 C.F.R. §§ 404.1527(d) 416.927(d) (2013) (noting statements that a claimant is disabled or cannot work are not medical opinions, and are issues to be determined solely by the Commissioner because they are administrative findings). As regards the doctor's vague checkmarks next to similarly vague restrictions, these indications fall squarely within the "patently deficient" standard that was recently examined by the Sixth Circuit. In *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004), the Sixth Circuit noted that the failure to follow the treating physician rule may be harmless "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Id.* The court later applied that standard in *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016). In *Hernandez*, as is the case here, the opinion at issue consisted of little more than vague checkmarks

11

with no effort at developed explanation. The Court concluded that "[e]ven if the ALJ erred in failing to give good reasons for not abiding by the treating physician rule, it was harmless error because the [opinion] here is 'weak evidence at best' and meets our patently deficient standard." *Id.* (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

Despite these deficiencies, the ALJ thoroughly analyzed the opinion. In addition to finding the opinion to be unsupported, the ALJ noted Dr. Davis' opinion was inconsistent with his own treatment notes. Those records, albeit largely in checkmark form as well, generally indicate normal objective findings. (*See, e.g.*, PageID.310–313, 322–333.) Accordingly substantial evidence supports the ALJ's decision to assign less than controlling weight to Dr. Davis' opinion.

Plaintiff maintains, however, that even if the opinion was not entitled to controlling weight, it should have been evaluated under the factors articulated in 20 C.F.R. §§ 404.1527(c), 416.927(c). Under a proper analysis, Plaintiff contends, the ALJ should still have given Dr. Davis' opinion greater weight than as was assigned to the non-examining agency physicians. Plaintiff's claim is without merit. The ALJ was plainly aware of his obligation to consider the opinions under 20 C.F.R. §§ 404.1527, 416.927 and a review of the opinions demonstrates the ALJ correctly applied the regulations.

It is true that the Commissioner will "[g]enerally . . . give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). But this is by no means as rigid a rule as Plaintiff apparently would prefer. To the contrary, an ALJ may rely on the opinions of the state agency physicians who reviewed a claimant's file. *See* 20 C.F.R. §§ 404.1527(e)(2)(i),

416.927(e)(2)(i) (2013). "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I) (2013)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Indeed, "in appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013).

The ALJ is responsible for weighing conflicting medical opinions. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). Where a treating physician's opinion is not supported by objective medical facts, a non-examining physician's opinion may be accepted over it "when the non-examining physician clearly states the reasons for his differing opinion." *Carter v. Comm'r of Soc. Sec.*, 36 F. App'x 190, 191 (6th Cir. 2002). Here, it is patent the ALJ understood the agency consultants had not examined Plaintiff, but nonetheless noted that the opinions were consistent with the record and was based upon the consultants' detailed knowledge of agency regulations. (PageID.49.) This was a proper application of the factors found in 20 C.F.R. §§ 404.1527, 416.927. Accordingly, the Court finds no error here.[2]

---

[2] In his reply brief, Plaintiff contends that the ALJ should have re-contacted Dr. Davis for clarification of his opinion. (PageID.530.) The claim is without merit. In *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269 (6th Cir. 2010), the Sixth Circuit held that there were "two conditions that must both be met to trigger the duty to recontact: 'the evidence does not support a treating source's opinion . . . and the adjudicator cannot ascertain the basis of the opinion from the

13

### 3. The ALJ's Evaluation of Plaintiff's Fibromyalgia.

Plaintiff next contends the ALJ failed to properly evaluate his fibromyalgia under social security rulings. Plaintiff correctly notes that SSR 12-2p is the applicable ruling. Beyond that, however, Plaintiff provides only brief and conclusory remarks that the ALJ's decision fails to properly apply this ruling. Accordingly, Plaintiff fails to demonstrate he is entitled to relief on this claim of error.

Admitting that the ALJ properly found his fibromyalgia was a severe impairment, Plaintiff alleges that "the balance of the assessment was not performed as required" by the ruling. (PageID.508.) Similarly, Plaintiff states that SSR 12-2p "requires certain procedures to evaluate fibromyalgia that was [sic] not done here." (PageID.508.) But Plaintiff never states what those procedures are, nor how the ALJ's analysis failed to satisfy SSR 12-2p's procedural requirements. The Sixth Circuit has recently examined a similar claim regarding SSR 12-2p, and the court's decision on the point is worth quoting in its entirety here:

> On July 25, 2012, the SSA released SSR 12–2p ("the Ruling"), which "provides guidance on how we develop evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how we evaluate fibromyalgia in disability claims . . . ." SSA 12–2p, 2012 WL 3104869, at *1 (July 25, 2012). To that end, SSR 12–2p

---

record.'" *Id.* at 273 (quoting SSR 96–5p, 1996 WL 374183, at *6 (July 2, 1996)). An unsupported opinion alone does not trigger the duty to re-contact. *Id.* Accordingly, the duty was not triggered in this case because the ALJ did not reject the physician's opinions because they were unclear; instead, he rejected the opinions because they were unsupported and inconsistent with the evidence of record. "'[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where, as here, the ALJ rejects the limitations recommended by that physician." *Ferguson*, 628 F.3d at 274 (quoting *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 n.3 (6th Cir. 2009)). Furthermore, the former regulations which had "recogniz[ed] a duty to recontact in cases where the evidence from the treating physician [was] inadequate to determine disability and contain[ed] a conflict or ambiguity requiring clarification," *Id.* at 273 (citing 20 CFR. §§ 404.1512(e), 416.912(e)), were revised effective March 26, 2012, well before the ALJ's decision in this case. The revised regulations are found at 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1) and clarify that the Commissioner has "discretion, not a duty, to re-contact a medical source." *Jones v. Colvin*, No. 2:12–cv–3605, 2014 WL 1046003, at *11 (N.D. Ala. March 14, 2014). Accordingly, the ALJ was not required to re-contact Dr. Davis.

describes criteria for establishing that a person has a medically determinable impairment ("MDI") of fibromyalgia, *id.* at \*2–3, the sources of evidence the ALJ may look to, *id.* at \*3–4, and how a claimant's subjective assertions of pain and functional limitations are evaluated, *id.* at \*4. The Ruling also states that fibromyalgia should be analyzed under the traditional five-step evaluation process used for analyzing other claims for SSI. *Id.* at \*5–6. Importantly, as Plaintiff concedes in her brief before this Court, SSR 12–2p "is merely a binding interpretation of that which was already lawfully in effect." In other words, SSR 12–2p merely provides guidance on how to apply pre-existing rules when faced with a claimant asserting disability based on fibromyalgia.

Plaintiff argues that "the Commissioner failed to apply SSR 12–2p in denying the application for benefits." Below, the district court observed that "Plaintiff fails to explain how the ALJ's RFC assessment contravenes SSR 12–2p or how the Commissioner's final decision should have differed in light of SSR 12–2p." We find the same is true in this appeal. In addition to the above-quoted assertion that the ALJ "failed to apply SSR 12–2p," Plaintiff ambiguously asserts that the ALJ "failed to enter into any discussion of the factors required by law and the SSR." Yet, Plaintiff does not state which "factors" were not discussed.

To the extent these vague arguments suggest that the ALJ failed to explicitly apply 12–2p's diagnostic criteria for determining whether a claimant has an MDI of fibromyalgia, such error—to the extent it exists—is harmless given that the ALJ concluded (1) that Plaintiff did have fibromyalgia, and (2) that her fibromyalgia constituted a "severe impairment" under the second step of the five-step analysis. To the extent Plaintiff argues that the ALJ failed to properly apply SSR 12–2p's guidelines for evaluating a claimant's personal statements about the severity of her own symptoms, that argument is also unavailing. Section IV of SSR 12–2p states that when evaluating a claimant's statements, ALJs must "follow the two-step process set forth in our regulations and in SSR 96–7p." SSR 12–2p, 2012 WL 3104869, at \*5. In this case, the ALJ cited SSR 96–7p and explicitly applied the two-step process described therein. Finally, as discussed above, the ALJ applied the standard five-step process for evaluating all disability claims. In sum, although the ALJ did not explicitly cite SSR 12–2p, it nevertheless applied the Ruling's principles. That is all that is required under our precedents. *McClanahan*, 474 F.3d at 834 \*400 ("Because the ALJ conducted the analysis required by the

Ruling, his failure to mention it by name is not fatal to the decision.").

*Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 398–400 (6th Cir. 2016) (internal footnotes and citations omitted). The above analysis is easily applied to the instant case. As in *Luukkonen*, Plaintiff provides only ambiguous claims regarding SSR 12-2p. Furthermore, as the Sixth Circuit noted, the ruling only provides guidance on applying pre-existing rules. In other words, the ruling does not require an analysis separate from the traditional five-step sequential evaluation. Here, as in *Luukkonen*, the ALJ found Plaintiff's fibromyalgia constituted a severe impairment at step two. (PageID.41.) Proceeding with the analysis, the ALJ found that none of Plaintiff's impairments, either alone or in combination, met or equaled a listed impairment. (PageID.41.) Then, in the RFC discussion, the ALJ provided an extensive discussion of Plaintiff's fibromyalgia. (PageID.44.) And finally, as was also the case in *Luukkonen*, the ALJ cited and applied the two step process called for in SSR 96-7p. (PageID.43–44.) This was all that the ruling required on this record, and therefore Plaintiff's claim that the ALJ failed to properly apply SSR 12-2p is without merit.

Accordingly, this claim of error is denied.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED.**

A separate judgment shall issue.


Dated:     July 3, 2017                    /s/ Robert J. Jonker
                                           ROBERT J. JONKER
                                           CHIEF UNITED STATES DISTRICT JUDGE